**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **RODOLFO DELEON III** | § | |
| | § | **1:21-CV-1013-LY-SH** |
| v. | § | **1:14-CR-349-LY-1** |
| | § | |
| **UNITED STATES OF AMERICA** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
          UNITED STATES DISTRICT JUDGE

Before the Court are Rodolfo Deleon III's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255, filed November 8, 2021 (Dkt. 40); the Government's Response to Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence, filed March 9, 2022 (Dkt. 45); and Movant's Reply, filed March 21, 2022 (Dkt. 46). The District Court referred this case to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, and the Court Docket Management Standing Order.

## I.   Background

On November 18, 2014, Robert Deleon III was charged in an Indictment with Possession with Intent to Distribute a Controlled Substance (Methamphetamine), in violation of 21 U.S.C. § 846{841(a)(1) & (b)(1)(C)} (Count One); and two counts of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 924(g)(1) (Counts Two and Three). Dkt. 1 in 1:14-CR-00349-LY. Deleon pled guilty to Count One of the Indictment pursuant to a written plea agreement. Dkt. 17 ("Plea Agreement"). As part of his Plea Agreement, Deleon admitted to the "Factual Basis" of his offense, which states that:

> a search was conducted of RODOLFO DELEON III's home on July 14, 2014 by APD officers. Officers found a hidden compartment inside RODOLFO DELEON III's bedroom that contained two firearms: a High Point Model JH45, .45 ACP semi-automatic pistol, serial number 327655 and an AMT Backup Model, .380 caliber semi-automatic pistol, serial number A21214. Officers also found body armor and 26 grams of crystal methamphetamine. Laboratory analysis confirmed that the substance was in fact D-methamphetamine, a schedule II controlled substance.
>
> RODOLFO DELEON Ill admitted in a post-Miranda interview that he had sold methamphetamine on multiple prior occasions and that the two firearms found in the hidden compartment belonged to him. RODOLFO DELEON III also told officers that a drug dealer in Austin owed him in excess of $30,000 for methamphetamine that RODOLFO DELEON III had "fronted" him. Earlier in the conversation RODOLFO DELEON III told agents that methamphetamine was being sold for approximately $8,000 a pound.
>
> RODOLFO DELEON III admits that he intentionally and unlawfully possessed with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance. Defendant adopts this Factual Basis and agrees that the facts set forth herein are accurate in every respect and that had the matter proceeded to trial, the United States would have proved each of these facts beyond a reasonable doubt.

*Id.* at 7-8. As part of his Plea Agreement, Deleon waived his right to file a direct appeal or a collateral attack on his conviction or sentence except with regard to ineffective assistance of counsel and prosecutorial misconduct. Dkt. 17 at 3.

The Presentence Investigation Report ("PSR") prepare by the United States Probation Office ("USPO") calculated Deleon's base offense level to be 32 under § 2D1.1(b)(1) of the 2014 U.S. Sentencing Guidelines Manual. Dkt. 33 ¶ 15. Because Deleon was found in possession of two firearms at the time of his arrest, his offense level was increased by two levels, pursuant to

§ 2D1.1(b)(1) of the Guidelines.[1] *Id.* ¶ 16. However, Deleon also received a three level downward departure for acceptance of responsibility. *Id.* ¶¶ 22, 23. Based on a total offense level of 31 and a criminal history category of II, Deleon's imprisonment range under the Guidelines was estimated to be 121 months to 151 months. *Id.* ¶ 60.

On July 7, 2015, the District Court sentenced Deleon to 121 months imprisonment, a three-year term of supervised release; a $100 special assessment; and forfeiture of $3,683. Dkt. 34. Deleon did not file a direct appeal.

More than six years after his conviction and sentence, Deleon filed the instant Motion to Vacate under 28 U.S.C. § 2255, arguing that his sentence should not have been enhanced for possession of a firearm under § 2D1.1(b)(1) of the Guidelines.

## II. Analysis

Deleon argues that his sentence should not have been enhanced by two levels for possession of a firearm under § 2D1.1(b)(1) of the Guidelines "due to the lack of direct possession of the weapon." Dkt. 40 at 2. Deleon contends that he did not directly possess the firearms because they were "concealed in a wall". *Id.*[2] Deleon "seeks review of his sentence under current Guidelines which are far less stringent." *Id.* at 3.

---

[1] Section 2D1.1(b)(1) of the Guidelines allows for a two-level sentence enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during certain drug offenses. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). The Government must prove, by a preponderance of the evidence, that the defendant possessed the weapon. *Id.* "First, the Government can prove that the defendant personally possessed the weapon by showing that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *Id.* "Alternatively, when another individual involved in the commission of an offense possessed the weapon, the Government must show that the defendant could have reasonably foreseen that possession." *Id.* at 764-65.

[2] In support of this argument, Deleon relies on *United States v. Sincleair*, 16 F.4th 471 (5th Cir. 2021), in which the defendant, Phillip Sincleair, filed a direct appeal of his conviction, arguing that the district court erred in applying the § 2D1.1(b)(1) firearm enhancement because the government had not shown the firearm found at his co-conspirator's house (which was owned by and registered to his co-conspirator) was possessed by Sincleair. Notably, Sincleair's PSR did not specify whether the enhancement was based on Sincleair's personal possession of the firearm or on possession of the firearm by one of Sincleair's

The Court is unable to address the merits of Deleon's Motion because it is untimely under the one-year statute of limitations applicable to motions under § 2255. Section 2255 "establishes a '1-year period of limitation' within which a federal prisoner may file a motion to vacate, set aside, or correct his sentence under that section." *Dodd v. United States*, 545 U.S. 353, 354 (2005). Specifically, § 2255 provides that the limitation period shall run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). The movant in a § 2255 proceeding has the burden of demonstrating that his motion is timely. *United States v. Duran*, 934 F.3d 407, 413 (5th Cir. 2019).

In most cases, the operative date from which the limitation period is measured will be the one identified in § 2255(f)(1): "the date on which the judgment of conviction becomes final." *Dodd*, 545 U.S. at 357. As noted, the District Court entered Judgment on July 7, 2015. Dkt. 34. Under Federal Rule of Civil Procedure 4(b)(1)(A)(i), a defendant's notice of appeal must be filed within 14 days after the entry of judgment. Because Deleon did not file a direct appeal, the limitation

---

"unindicted co-conspirators." *Id.* at 475. Because the PSR and district court did not explain which form of possession was attributed to Sincleair, the Fifth Circuit vacated and remanded Sincleair's sentence for the district court to make the appropriate findings. *Id.* Deleon's reliance on *Sincleair* is misplaced because the PSR clearly attributed the firearms to Deleon and Deleon admitted that the firearms were his. In addition, *Sincleair* involved a direct appeal and not a motion to vacate under § 2255, which is subject to different standards and limitations.

4

period began to run on July 21, 2015, when the deadline for filing a direct appeal expired. *See United States v. Gonzalez*, 592 F.3d 675, 677 (5th Cir. 2009) (stating that, where movant did not file a notice of appeal, "his conviction became final when the deadline for filing an appeal expired"). Thus, Deleon had until July 21, 2016 to file his § 2255 Motion. Deleon, however, did not file his Motion to Vacate until November 8, 2021, more than five years after the deadline. Dkt. 40. Deleon's § 2255 Motion thus is time-barred under § 2255(f)(1).

No other provision of § 2255(f) applies in this case. Accordingly, Deleon has failed to meet his burden to demonstrate that his filing was timely, and his § 2255 Motion must be dismissed.

### III.     Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DISMISS** Rodolfo Deleon III's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 40) as time-barred.

### IV.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

## V.     Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, as amended, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant.

A COA may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* The Court further held:

When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists could not debate the dismissal of Movant' § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve

6

encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, it is recommended that a certificate of appealability not be issued.

**SIGNED** on August 8, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE